**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| SYMMETRIX VIDEO SYSTEMS LLC, | |
| Plaintiff, | |
| v. | Civil Action No. 6:20-cv-1151 |
| | **JURY TRIAL DEMANDED** |
| CISCO SYSTEMS, INC, | |
| Defendant. | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Symmetrix LLC ("Plaintiff" or "Symmetrix") for its Complaint against Cisco Systems, Inc. ("CSI" or "Defendant"), alleges the following:

### NATURE OF ACTION

1.       This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq*.

### THE PARTIES

2.       Plaintiff Symmetrix is a limited liability company organized and existing under the laws of the State of Delaware, having its principal place of business at 261 West 35th St., Suite #1003, New York, NY.

3.       Upon information and belief, CSI is a corporation organized under the laws of the California with a place of business at 170 West Tasman Drive, San Jose, California.  Upon information and belief, CSI sells, offers to sell, and/or uses products and services throughout the United States, including in this judicial district, and introduces infringing products and services

into the stream of commerce knowing that they would be sold and/or used in this judicial district and elsewhere in the United States.

## JURISDICTION AND VENUE

4.      This is an action for patent infringement arising under the Patent Laws of the United States, Title 35 of the United States Code.

5.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

6.      Venue is proper in this judicial district under 28 U.S.C. § 1400(b).

7.      This Court has personal jurisdiction over Defendant because Defendant has purposefully availed itself of the rights and benefits of the laws of this State and this Judicial District.  On information and belief, Defendant is organized and existing under the laws of Delaware.

8.      This Court has personal jurisdiction over the CSI under the laws of the State of Texas, due at least to their substantial business in Texas and in this judicial district, directly or through intermediaries, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct and/or deriving substantial revenue from goods and services provided to individuals in the State of Texas.  Venue is also proper in this district because CSI has a regular and established place of business in this district.  For instance, CSI has operations in this judicial district.  For example, CSI  has facilities located at 12515-3 Research Park Loop, Austin, TX 78759. .  (*See, e.g.*, https://www.cisco.com/c/en/us/about/contact-cisco.html/general-inquiries/locating-cisco-office.)

## BACKGROUND

9.      Bao Tran is the inventor of U.S. Patent No. 10,547,811 ("the '811 patent").  A true and correct copy of the '811 patent is attached as Exhibit A.

10.     The '811 patent resulted from the pioneering efforts of Mr. Tran (hereinafter "the Inventor") in the area of video conferencing.  These efforts resulted in the development of a system and method for processor utilization-based encoding in the late 2010's.  At the time of these pioneering efforts, there was no widely implemented technology to address the problem of high computing device processor utilization during  video conferencing.  The Inventor conceived of the invention claimed in the '811 patent as a way to manage computer device processor utilization and improve computing device performance during video conferencing.

11.     For example, the Inventor developed a method for video conferencing that includes generating, at a computing device, multimedia data including audio and video corresponding to video conferencing, determining first, second and third computing device processor utilization levels, encoding first, second and third portions of the of multimedia data and sending the first, second and third encoded portions of multimedia data via a network to a second computing device, where the second computing device processor utilization level is greater than the first computing device processor utilization level and the second portion of encoded multimedia data includes audio but not video, and where the third computing device processor utilization level is less than the second computing device processor utilization level and the third portion of encoded multimedia data includes audio and video.

**Advantage Over the Prior Art**

12.     The patented invention disclosed in the '811 patent, provides many advantages over the prior art, and in particular improves the operations of encoding multimedia data by a computing device over a network while video conferencing.  (*See* '811 patent at col. 11, lines 36-41.)  One advantage of the patented invention is that it optimizes processor utilization of a

computing device during video conferencing over a network.  (*See* '811 patent at col. 11, lines 42-43.)

13.     Another advantage of the patented invention is that it optimizes speed of encode of multimedia data.  (*See Id*.)

14.     Because of these significant advantages that can be achieved through the use of the patented invention, Symmetrix believes that the '811 patent presents significant commercial value for companies such as CSI.  Indeed, the patented invention improves the usability and marketability of the companies' video conferencing products.

**Technological Innovation**

15.     The patented subject matter and innovations disclosed in the '811 patent addresses technical problems related to encoding and sending multimedia data by a computing device over a network, particularly problems related to management of resource utilization of a computing device's central processing unit ("CPU") (also called a central processor or main processor) in connection with multimedia data sent over a network.  As the '811 patent explains, one of the limitations of the prior art as regards the encoding and sending multimedia data by a computing device over a network was that conventional video conferencing could consume all of the computing device's processor in the encode/decode task in such a way that the user cannot do anything else on his or her computer besides encoding.  (*See* '811 patent at col. 11, lines 36-41.)

16.     Claim 7 of the '811 patent does not merely recite the performance of some well-known business practice from the pre-Internet world along with the requirement to perform it on the Internet.  Instead, claim 7 of the '811 patent is directed to an inventive concept that is deeply rooted in engineering technology, and overcomes and/or addresses problems specifically arising

out of how to manage resource utilization of a computing device's CPU when sending encoded multimedia data over a network.

17.     In addition, the claims of the '811 patent are directed to  at least one inventive concept that improves the functioning of a computing device, particularly the functioning of a computing device's CPU.

18.     Moreover, claim 7 of the '811 patent is directed to  an inventive concept that is not merely routine or conventional use of video conferencing technology.  Instead, claim 7 of the '811 patent is directed to providing  a new and novel solution to specific problems related to improving the management of resource utilization of a computing device's CPU when encoding multimedia data to be sent over a network.

19.     And finally, the '811 patent does not preempt all the ways of encoding and sending multimedia data by a computing device over a network that may be used to improve the management of  resource utilization of a computing device's CPU when sending multimedia data over a network, nor does the '811 patent preempt any other well-known or prior art technology.

20.     Accordingly, claim 7 of the '811 patent recites a combination of elements sufficient to ensure that the claim in substance and in practice amounts to significantly more than a patent-ineligible abstract idea.

**Defendant's Activities**

21.     Defendant is a technology company that develops and licenses video conferencing services.

22.     Among Defendant's video conferencing services is WebEx Meetings.



https://www.webex.com/content/webex/c/en_US/index/downloads.html/

23.     On information and belief, Defendant licenses, or otherwise offers, its WebEx

Meetings software according to a number of different plans, including a free personal plan, as

well as starter, plus and business plans, for which a fee is charged. *See*,

https://www.webex.com/pricing/index.html.  (Collectively "WebEx Meetings." and referred to

as the "Accused Instrumentality"; the Accused Instrumentality also includes the WebEx

meetings mobile app and the WebEx meetings desktop software application as referenced

below).  Plaintiff notes that while CSI has offered different versions of the WebEx Meetings

software over the years, the Accused Instrumentality includes the versions of the WebEx

Meetings software that is used or usable with a video encoder, such as an H.264 compatible

encoder.  Illustrative examples of such encoders include OpenH264 encoders and the Opus

encoder referenced below.  Upon information and belief, the versions of the WebEx Meetings

software that have been used in connection with H.264 encoders were introduced commercially

6

by CSI starting as early as the year 2014 and have been used since that time. As an example, CSI

added an H.264 plug-in for Cisco H.264 encoders into the WebEx Meetings software in 2014.

(See

https://www.cisco.com/c/en/us/td/docs/telepresence/infrastructure/tms/config_guide/webex_enab

led_telepresence/cts_webex_config/cts_webex_bridge.html).  Further, referring to the current

release of the WebEx Meetings software, "WebEx video is based on H.264 SVC technology that

allows video quality adaptation based upon available bandwidth."

http://www.meetingconnect.net/files/CiscoWebExVideoServices.pdf.  In addition, Defendant

makes WebEx Meetings available to its own employees.

24.     To use WebEx Meetings, a licensee (or subscriber or customer) downloads

Defendant's WebEx Meetings software onto an end user computing device.  As an example, a

subscriber having a computer device *(e.g.* desktop computer or mobile phone) with a browser

may access the WebEx Meetings software via a Cisco Software as a Service (SaaS) platform.

Software as a service (SaaS) is a delivery and licensing model in which software is accessed on

the web via a subscription rather than installed on local computers. (*See*

https://www.cisco.com/c/en/us/products/software/what-is-software-as-a-service-saas.html)

25.     Defendant offers the WebEx Meetings software to mobile device users by

offering a mobile app. Defendant makes the following statements (on its website): 1) "use the

web app to join a Webex Meeting from your browser.  This is the easiest way to join if you're

using a Chromebook, a Linux computer, or you simply don't want to download anything;" 2)

"When it's time to connect to a scheduled Cisco Webex meeting or Personal Room meeting, you

can join quickly from the mobile app."; and 3) "You can start an instant meeting by opening the

Webex Meetings app and tapping Start Meeting."

26.     Defendant offers a WebEx Meetings desktop software application to subscribers. The WebEx Meetings desktop software application automatically downloads after starting or joining a WebEx meeting from a WebEx site.  Defendant also provides installation instructions on its website for a user to download the WebEx Meetings desktop software app. (https://help.webex.com/en-us/0tow9g/Download-the-Cisco-Webex-Meetings-Desktop-App)

27.     The Defendant WebEx Meetings desktop software application and the mobile app are both part of the Accused Instrumentality.

28.     Defendant's WebEx Meetings complies with and has adopted OpenH264, a video codec specification, which defines encoding and sending video data via a network.

## Supported Codecs

You can refer to these specifications to get information about the supported codecs, video definition, and bandwidth usage in Webex Teams.

We optimize the quality by using the Opus codec for audio and the OpenH264 codec for video.

https://help.webex.com/en-us/nckc1aeb/Video-Specifications-for-Cisco-Webex-Teams-Calls-and-Meetings

### About the WebEx Video Codec

The Cisco WebEx Meeting Center has adopted the H.264 standards-based Scalable Video Coding (SVC) for video compression to deliver adaptive standard-quality (SQ), high-quality (HQ), and high- definition (HD) video. HD (720p) video is currently available in Meeting Center and Training center.

The video engine consists of all the fundamental video processing modules, including capture, encoding, transmission, receiving, decoding, and rendering. It also includes supporting modules for error control, congestion control, bit-rate adaptation, and encryption.

https://informationsecurity.report/Resources/Whitepapers/e667bc78-998b-4908-b109-0fe46c517474_Cisco%20WebEx%20Network%20Bandwidth.pdf,

29.     Defendant's WebEx Meetings also complies with and has adopted Opus codec, which defines encoding and sending audio data, via a network.

**Supported Codecs**

You can refer to these specifications to get information about the supported codecs, video definition, and bandwidth usage in Webex Teams.

We optimize the quality by using the Opus codec for audio and the OpenH264 codec for video.

https://help.webex.com/en-us/nckc1aeb/Video-Specifications-for-Cisco-Webex-Teams-Calls-

and-Meetings

## COUNT I -INFRINGEMENT OF U.S. PATENT NO. 10,547,811

30. Plaintiff incorporates by reference the allegations contained in paragraphs 1 to 36 above.

31.     On January 28, 2020, the '811 patent was duly and legally issued by the United States Patent and Trademark Office under the title "System and Method(s) for Processor Utilization-based Encoding."

32.     Symmetrix is the assignee and owner of the right, title and interest in and to the '811 patent, including the right to assert all causes of action arising under said patent and the right to any remedies for infringement of it.

33.     On information and belief, Defendant has and continues to directly infringe at least claim 7 (the "Claimed Method") of the '811 patent when the Accused Instrumentality (via one or more computer devices) is executed and generates multiple portions of multimedia data on a computing device having a central processing unit (CPU), encodes the multimedia data and sends the encoded multimedia data from the computing device via a network to a second computing device (*e.g.* an end user computer).

34.     The central processing unit of a computing device (that is executing the Accused Instrumentality) is or includes electronic circuitry that executes instructions that make up a computer program, such as Defendant's WebEx Meeting software. *See*, https://en.wikipedia.org/wiki/Central_processing_unit

35.     Defendant (and licensees of Defendant) executes the Accused Instrumentality on at least one computer.



https://www.webex.com/content/webex/c/en_US/index/downloads.html/

36.     The Accused Instrumentality (via a computing device) generates, at the computing device, multimedia data including video and audio.  The Accused Instrumentality (via the computing device and via Defendant's cloud network), provides video conferencing. The multimedia data is communicating during and corresponds to the video conferencing.  Thus, the first element of claim 7 is satisfied.

37.     The Accused Instrumentality (via a computing device), determines a first utilization level of a process (of the computing device).  Thus, the second element of claim 7 is satisfied.

**Figure 10.**   Statistics Window



https://informationsecurity.report/Resources/Whitepapers/e667bc78-998b-4908-b109-0fe46c517474_Cisco%20WebEx%20Network%20Bandwidth.pdf

38.    The Accused Instrumentality (via a computing device) uses the OpenH264 codec and the Opus codec to encode and send video and audio portions of multimedia data.  In accordance with the Claimed Method, the Accused Instrumentality (via the computing device) encodes and sends a first portion of multimedia data via a network (*e.g.* the Cisco cloud network), the first portion of the multimedia data including video and audio.  Thus, the third and fourth elements of claim 7 are satisfied.

Supported Codecs

You can refer to these specifications to get information about the supported codecs, video definition, and bandwidth usage in Webex Teams.

We optimize the quality by using the Opus codec for audio and the OpenH264 codec for video.

https://help.webex.com/en-us/nckc1aeb/Video-Specifications-for-Cisco-Webex-Teams-Calls-

and-Meetings

About the WebEx Video Codec

The Cisco WebEx Meeting Center has adopted the H.264 standards-based Scalable Video Coding (SVC) for video compression to deliver adaptive standard-quality (SQ), high-quality (HQ), and high- definition (HD) video. HD (720p) video is currently available in Meeting Center and Training center.

The video engine consists of all the fundamental video processing modules, including capture, encoding, transmission, receiving, decoding, and rendering. It also includes supporting modules for error control, congestion control, bit-rate adaptation, and encryption.

https://informationsecurity.report/Resources/Whitepapers/e667bc78-998b-4908-b109-

0fe46c517474_Cisco%20WebEx%20Network%20Bandwidth.pdf

  39. The Accused Instrumentality (via a computing device) determines a second utilization level of the processor, and the second utilization level is greater than the first utilization level.  Thus, the fifth element of claim 7 is satisfied.



https://informationsecurity.report/Resources/Whitepapers/e667bc78-998b-4908-b109-0fe46c517474_Cisco%20WebEx%20Network%20Bandwidth.pdf

40.     The Accused Instrumentality (via a computing device) encodes and sends a second portion of the multimedia data based on the second utilization level, the second portion including audio but not video. (*e.g.* see below).  Thus, the sixth and seventh elements of claim 7 are satisfied.

**Frame-Rate Range**

WebEx supports various frame-rate ranges. On the sender side, it depends on the camera capture capability and available computing and bandwidth resources. On the receiver side, it depends on the bandwidth and computing resources.

- Up to 30-fps HQ and HD video is supported in a one-on-one meeting (only two participants point to point [P2P]).
- Up to 24-fps HQ and HD video is supported in a multipoint meeting (three or more participants).
- Up to 18-fps 180p video is supported in a one-on-one meeting (only two participants P2P).
- Up to 12-fps 180p video is supported in a multipoint meeting (three and more participants).
- The WebEx client may stop sending and receiving the video if the network or hardware environment conditions deteriorate drastically.

https://informationsecurity.report/Resources/Whitepapers/e667bc78-998b-4908-b109-0fe46c517474_Cisco%20WebEx%20Network%20Bandwidth.pdf.

# Low-Bandwidth Errors in Cisco Webex Video Platform Meetings

## Common causes and resolutions to Low-Bandwidth messages.

Low-Bandwidth errors in Cisco Webex Video Platform meetings.
I get a low-bandwidth error when I try to view video from TelePresence users.
How do I troubleshoot 'low-bandwidth' errors in Cisco Webex Video Platform?
I can see a yellow triangle warning icon instead of video in my Cisco Webex Video Platform meeting.
Error: 'Due to low-bandwidth or local computer conditions (such as CPU or RAM use), video is not currently available'

https://help.webex.com/en-us/WBX84420/Low-Bandwidth-Errors-in-Cisco-Webex-Video-Platform-Meetings.

     41.    The Accused Instrumentality (via the computing device) determines a third utilization level of the processor, and the third utilization level is less than the second utilization level (*e.g.* see below).  Thus, the eighth element of claim 7 is satisfied.

**Figure 10.** Statistics Window



https://informationsecurity.report/Resources/Whitepapers/e667bc78-998b-4908-b109-

0fe46c517474_Cisco%20WebEx%20Network%20Bandwidth.pdf

42.     The Accused Instrumentality (via the computer) sends a third portion of the

multimedia data based on the third utilization level, the third portion including video and audio

data. (*e.g*., see below).  Thus, the ninth and final element of claim 7 is satisfied.

**About the WebEx Video Codec**

The Cisco WebEx Meeting Center has adopted the H.264 standards-based Scalable Video Coding (SVC) for video compression to deliver adaptive standard-quality (SQ), high-quality (HQ), and high- definition (HD) video. HD (720p) video is currently available in Meeting Center and Training center.

The video engine consists of all the fundamental video processing modules, including capture, encoding, transmission, receiving, decoding, and rendering. It also includes supporting modules for error control, congestion control, bit-rate adaptation, and encryption.

https://informationsecurity.report/Resources/Whitepapers/e667bc78-998b-4908-b109-

0fe46c517474_Cisco%20WebEx%20Network%20Bandwidth.pdf.   Defendant's   use   of   a

computing device for videoconferencing using its WebEx Meetings directly infringes, either

literally or under the doctrine of equivalents, one or more claims of the '811 patent in violation of

35 U.S.C. § 271(a).

43.     On information and belief, Defendant has and continues to directly infringe at

least claim 7 of the '811 patent when its employees use the Accused Instrumentality on a

computer owned by the Defendant (*e.g.* employee use of video conferring or testing of the

WebEx Meetings software).

44.     In the case of usage of the WebEx Meetings software by Defendant's employees

(*e.g.* for commercial use or for testing), the computer is a computing device controlled by at least

one of the employees and such computing device includes a CPU and executes the WebEx

Meetings software (or at least a portion thereof).

45.     The Accused Instrumentality infringed and continues to infringe claim 7 of the

'811 patent during the pendency of the ' 811 patent.

46.     On information and belief, Defendant had actual knowledge of the '811 patent at

least as early as July 10, 2020, the date of Defendant's receipt of  Plaintiff's pre-service letter

and complaint.

47.      Upon information and belief, since CSI had knowledge of the '811 patent, CSI

has induced and continues to induce others to infringe at least claim 7 of the ' 811 patent under

35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively

aiding and abetting others to infringe, including but not limited to CSI's partners and customers,

whose use of the Accused Instrumentalities constitutes direct infringement of at least claim 7 of the '811 patent.

48.     In particular, CSI's actions that aid and abet others such as their partners and customers to infringe include distributing the Accused Instrumentalities and providing materials and/or services related to the Accused Instrumentalities.  On information and belief, CSI has engaged in such actions with specific intent to cause infringement or with willful blindness to the resulting infringement because CSI has had actual knowledge of the '811 patent and that its acts were inducing infringement of the '811 patent since CSI has had knowledge of the '811 patent.

49.     In particular, on information and belief, Defendant licenses, or otherwise offers, the Accused Instrumentalities to users and potential users of Defendant's video conferencing service.



https://www.webex.com/content/webex/c/en_US/index/downloads.html/

50.     To use WebEx Meetings, a licensee (or subscriber or customer) downloads Defendant's WebEx Meetings software onto an end user computing device.  As an example, a subscriber having a computer device (*e.g.* desktop computer or mobile phone) with a browser may access the WebEx Meetings software via a Cisco Software as a Service (SaaS) platform. Software as a service (SaaS) is a delivery and licensing model in which software is accessed on the web via a subscription rather than installed on local computers. (*See* https://www.cisco.com/c/en/us/products/software/what-is-software-as-a-service-saas.html)

51.     Defendant offers the WebEx Meetings software to mobile device users by offering a mobile app. Defendant makes the following statements (on its website): 1) "use the web app to join a Webex Meeting from your browser.  This is the easiest way to join if you're using a Chromebook, a Linux computer, or you simply don't want to download anything;" 2) "When it's time to connect to a scheduled Cisco Webex meeting or Personal Room meeting, you can join quickly from the mobile app."; and 3) "You can start an instant meeting by opening the Webex Meetings app and tapping Start Meeting."

52.     Defendant offers a WebEx Meetings desktop software application to subscribers. The WebEx Meetings desktop software application automatically downloads after starting or joining a WebEx meeting from a WebEx site.  Defendant provides installation instructions on its website for a user to download the WebEx Meetings desktop software app. (https://help.webex.com/en-us/0tow9g/Download-the-Cisco-Webex-Meetings-Desktop-App).  In addition, Defendant provides instructions on how to use the downloaded software.

# Thanks for downloading Cisco Webex Meetings.



**Step 1**
Double-click the
webexapp.msi file you
downloaded



**Step 2**
The Webex Meetings setup
wizard will launch. Follow the
instructions to set up.



**Step 3**
Once installed
the app will launch
automatically.

https://www.webex.com/downloads/downloads-thank-you-meetings.html

53.     Upon information and belief, since CSI had knowledge of the '811 patent, Defendant is liable as a contributory infringer of the ' 811patent under 35 U.S.C. § 271(c) by offering to sell, selling and importing into the United States videoconferencing software to be especially made or adapted for use in an infringement of the '811 patent.  The Accused Instrumentalities are material components for use in practicing the '811 patent and are specifically made and are not a staple article of commerce suitable for substantial non-infringing use.

54.     On information and belief, since CSI had knowledge of the ' 811 patent, CSI CSI's infringement has been and continues to be willful.

55.     Plaintiff has been harmed by Defendant's infringing activities.

56.     Defendant's infringement has damaged and continues to damage and injure Plaintiff.  Plaintiff's injury is irreparable and will continue unless and until Defendant is enjoined by this Court from further infringement.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Symmetrix demands a trial by jury on all issues triable as such.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Symmetrix demands judgment for itself and against Defendant CSI as follows:

A.     An adjudication that CSI has infringed the '811 patent;

B.     An award of damages to be paid by CSI adequate to compensate Symmetrix for CSI's past infringement of the '811 patent, and any continuing or future infringement through the date such judgment is entered, including interest, costs, expenses and an accounting of all infringing acts including, but not limited to, those acts not presented at trial;

C.     A declaration that this case is exceptional under 35 U.S.C. § 285, and an award of Symmetrix's reasonable attorneys' fees; and

D.     An award to Symmetrix of such further relief at law or in equity as the Court deems just and proper.


Dated:  December 16, 2020                    DEVLIN LAW FIRM LLC

                                             */s/ Timothy Devlin*
                                             Timothy Devlin (Pro Hac Vice to be Applied For)
                                             Alex Chan
                                             Wilmington, DE 19806
                                             Telephone: (302) 449-9010
                                             Facsimile:  (302) 353-4251
                                             tdevlin@devlinlawfirm.com
                                             achan@devlinlawfirm.com

                                             *Attorneys for Plaintiff Cisco Systems, Inc.*